# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 27, 2024

Lyle W. Cayce
Clerk

———————

No. 23-30298

———————

MGMTL, L.L.C.,

*Plaintiff—Appellee*,

*versus*

Strategic Technology Institute, Incorporated,

*Defendant—Appellant*.

————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:20-CV-2138

————————————————————

Before Haynes, Willett, and Oldham, *Circuit Judges*.

Per Curiam:[*]

MGMTL, LLC partnered with Strategic Technology Institute, Incorporated ("STI") to distribute a security management tool. After the partnership broke down, MGMTL sued STI for breach of contract, copyright infringement, and trade secrets misappropriation. A jury found for MGMTL on some of those claims and awarded damages. After the district court

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

entered final judgment, STI appealed. We affirm in part, reverse in part, and vacate in part.

I

A

After enlisting in the Marine Corps and serving on active duty, Jorge Menes entered the Marine Forces Reserve ("MFR"). While serving in MFR, he worked in security management. Menes thought the MFR had insufficient security management tools. So Menes developed his own, including what eventually became the Security Management and Reporting Tool ("SMART").

Menes developed SMART to streamline various security management processes, including form generation and clearance checking. SMART was made up of many different screen displays with headings like "Special Access Report Selection" or "Active Personnel." The software was written in Microsoft Access using Visual Basics for Application ("VBA"), a programming language used in Microsoft Office.

Menes and his uncle first developed SMART in 2011. In 2012, MFR began to use SMART on a trial basis at its security management office in New Orleans. In 2013, Menes's company, MGMTL, filed for and obtained a registered copyright to the SMART program. MGMTL attempted to license SMART to MFR for $30,000 a year, but MFR said no.

In 2015, Menes met with STI, a company with experience in government contracts and for which he had previously worked. In the summer of 2015, MGMTL and STI signed two contracts. The first contract, the "Software Evaluation Agreement," provided that STI could temporarily access the SMART with the understanding that MGMTL retained all intellectual property rights in the program. The second contract, the

"Distributor Agreement," granted STI limited rights to "advertise, promote, and resell" the SMART program, with potential royalties accruing to MGMTL. The Distributor Agreement confirmed that MGMTL retained all of the intellectual property rights to the SMART program and provided that STI could not "reverse engineer" or otherwise disassemble the program.

The parties vehemently disagree over what happened next.

In MGMTL's telling, STI proceeded to breach these agreements and infringe MGMTL's intellectual property by copying SMART for use in constructing a new program called Personnel Administrative Security System ("PASS"). Once STI sufficiently developed PASS, it broke off relations with Menes and MGMTL. STI proceeded to further revise PASS, represent PASS as its own intellectual property, and make PASS available for sale to the federal government.

STI tells a very different story. According to STI, its developers initially set out to create a web-based version of SMART, as approved by Menes. But STI eventually decided that a collaboration with MGMTL would make it hard to sell even an updated version of SMART to the federal government. Thus, STI cut off its relationship with Menes and MGMTL. Moreover, the PASS product was coded in different computer languages, had 100 times as much code as SMART did, and contained no lines of code that were copied directly from SMART.

B

On July 28, 2020, MGMTL filed suit against STI in the Eastern District of Louisiana. MGMTL asserted five claims: copyright infringement, breach of the Software Evaluation Agreement, breach of the Distributor Agreement, misappropriation of trade secrets under the Louisiana Uniform Trade Secrets Act ("LUTSA"), and misappropriation of trade secrets under

the federal Defend Trade Secrets Act ("DTSA"). MGMTL asked for injunctive relief and damages.

The district court denied STI's motions to dismiss and for summary judgment and the case went to a jury. After a seven-day trial, the jury found for MGMTL on two of the five claims—copyright infringement and breach of the Distributor Agreement—and awarded $180,000 in damages. But the jury found against MGMTL on the remaining three claims—breach of the Software Evaluation Agreement and the two trade secrets misappropriation claims.

STI moved for Rule 50(a) judgment as a matter of law, which the district court denied. The district court then entered an order titled "FINAL JUDGMENT," which awarded judgment to MGMTL on the copyright infringement, breach of the Distributor Agreement, and two trade secrets claims, and awarded MGMTL $180,000 in damages plus pre- and post-judgment interest. STI timely appealed.

II

The district court had original jurisdiction over MGMTL's federal law claims for copyright infringement and trade secrets misappropriation under 28 U.S.C. §§ 1331 and 1338(a). The district court had supplemental jurisdiction over MGMTL's state law claims for breach of contract and trade secrets misappropriation under 28 U.S.C. § 1367.

Under 28 U.S.C. § 1291, we have jurisdiction over appeals from final decisions. A decision is final when it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521 (1988) (citation omitted); *see also Beebe v. Russell*, 60 U.S. (19 How.) 283, 284 (1857) (a decree is final when it "disposes of the whole merits of the cause"). As a corollary, where a decision fails to dispose of all the asserted claims for relief, that decision is not final

and appealable. *See Talamini v. Allstate Ins. Co.*, 470 U.S. 1067 (1985); *accord Thompson v. Betts*, 754 F.2d 1243, 1245 (5th Cir. 1985).

Here, the district court entered an order on April 13, 2023, titled "FINAL JUDGMENT." But that order did not technically dispose of all five of MGMTL's claims. Specifically, it said nothing about the breach of the Software Evaluation Agreement claim. So on its face, it might seem unappealable under § 1291.[†]

Our court has identified certain exceptions to the "must dispose of all claims" rule regarding final decisions, however. *See McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 350 (5th Cir. 2004) (per curiam). As relevant here, we have held that "a decision that does not specifically refer to all pending claims will be deemed final if it is clear that the district court *intended*, by the decision, to dispose of all claims." *Id.* at 351 (emphasis in original); *see also Sch. Bd. of Avoyelles Par. v. U.S. Dep't of Interior*, 647 F.3d 570, 577 (5th Cir. 2011). The April 13th order referenced the jury's verdict disposing of all five claims, the title of the order was "FINAL JUDGMENT," and the order indicated that the only remaining issue in the case was MGMTL's motion for attorneys' fees. All of this suggests that the district court intended to dispose of all pending claims and enter a final decision appealable to this court. Accordingly, the order was an appealable final decision under § 1291.

## III

We review *de novo* a district court's decision on a Rule 50(a) motion for judgment as a matter of law, viewing the evidence in the light most favorable to the non-moving party. *MGE UPS Sys., Inc. v. GE Consumer &*

---

[†] The parties do not appear to have raised this jurisdictional issue, but we nevertheless "have an independent obligation to assess our own jurisdiction" in every case. *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019).

*Indus., Inc.*, 622 F.3d 361, 365 (5th Cir. 2010). "A party is only entitled to judgment as a matter of law on an issue where no reasonable jury would have had a legally sufficient evidentiary basis to find otherwise." *Apache Deepwater, LLC v. W&T Offshore, Inc.*, 930 F.3d 647, 653 (5th Cir. 2019); *see also Olibas v. Barclay*, 838 F.3d 442, 448 (5th Cir. 2016) ("[O]ur standard of review with respect to a jury verdict is especially deferential.") (quotation omitted).

We first (A) explain the district court's error with respect to the breach of the Software Evaluation Agreement claim. We then (B) discuss the district court's error with respect to the two trade secrets misappropriation claims. Finally, we (C) reject STI's arguments regarding the copyright infringement and breach of the Distributor Agreement claims.

A

First, the breach of the Software Evaluation Agreement claim. As the jury verdict form clearly indicates, the jury found that STI did not breach the Software Evaluation Agreement. But the April 13 order did not enter judgment for STI on that claim; in fact, the district court did not enter any judgment on the breach of the Software Evaluation Agreement claim. That was erroneous—judgment should have been entered for STI.

B

Next, the two trade secrets misappropriation claims. MGMTL brought two such claims, one under state law (LUTSA) and one under federal law (DTSA). The jury found that STI had misappropriated SMART, but the jury found no damages. Yet the district court entered judgment in favor of MGMTL on both trade secrets claims.

This was erroneous. Both LUTSA and DTSA enable litigants to recover damages for misappropriation of trade secrets. *See* La. Stat. Ann. § 51:1433; 18 U.S.C. § 1836(b)(3)(B). Proof of damages is an element in both

claims. *See Comput. Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 403 (5th Cir. 2000) ("[T]o recover damages under [LUTSA], a complainant must prove (a) the existence of a trade secret, (b) a misappropriation of the trade secret by another, and (c) the actual loss caused by the misappropriation." (quotation omitted)); *TransPerfect Glob., Inc. v. Lionbridge Techs., Inc.*, No. 22-1348, 2024 WL 177726, at *3 (2d Cir. Jan. 17, 2024) (discussing DTSA and the "element of damages"). In this case, the jury verdict forms indicated that proof of damages was a necessary element of both trade secrets claims. As the showing of damages is an element of both LUTSA and DTSA's cause of action for damages, the jury's finding that MGMTL proved no damages means that MGMTL failed to prove its trade secrets misappropriation claims. Therefore, judgment should have been entered for STI.

C

Finally, the remaining claims for copyright infringement and breach of the Distributor Agreement. On both claims, we reject STI's attempts to overturn the jury's verdict.

1

First, copyright infringement. On appeal, STI levies three objections to the jury's verdict in favor of MGMTL: no actionable copying, fair use, and statute of limitations. All three are meritless.

With respect to actionable copying, the jury was instructed on the "abstraction-filtration-comparison" test ("AFC test"), which separates protectable elements from non-protected elements. *See Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 142–43 (5th Cir. 2004) (per curiam) (discussing the AFC test). The jury then determined that the allegedly infringing work (PASS) was substantially similar to protectable elements of the infringed work (SMART). As the ultimate fact finder, *see Lee*, 379 F.3d at 142; *Creations*

*Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997) (per curiam); *Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F. App'x 259, 269 (5th Cir. 2014) (per curiam), the jury is entitled to deference, particularly given STI's copying of SMART's distinctive selection and arrangement of information. *Cf. S. Credentialing Support Servs., LLC v. Hammond Surgical Hosp., LLC*, 946 F.3d 780, 784 (5th Cir. 2020); *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1346 (5th Cir. 1994).

With respect to fair use, three of the four statutory factors weigh against STI's fair use defense. *Cf.* 17 U.S.C. § 107; *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 18–19, 23–25 (2021). STI's use was commercial and not transformative, the jury found that STI engaged in substantial copying, and the jury found that STI's use of SMART affected the market for SMART. *Cf. Google*, 593 U.S. at 26–40; *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 527–28 (2023); *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 321–23 (5th Cir. 2022). The only factor that weighs in favor of STI's fair use—the nature of the copyrighted work—is the "least significant" factor. *See Bell*, 27 F.4th at 323. Accordingly, STI is not entitled to judgment as a matter of law on its fair use defense.

With respect to timeliness, the statute of limitations for copyright infringement is three years, 17 U.S.C. § 507(b), and follows both the discovery and separate-accrual rules. *See Martinelli v. Hearst Newspapers, LLC*, 65 F.4th 231, 233 (5th Cir. 2023); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014). The jury found that MGMTL filed its July 28, 2020, lawsuit within three years after it knew or should have known about the last act of copyright infringement. Because the question of when the statute of limitations begins to run and the discovery rule are questions of fact, *see Taurel v. Cent. Gulf Lines, Inc.*, 947 F.2d 769, 772 (5th Cir. 1991); *In re Beef Indus. Antitrust Litig., MDL Docket No. 248*, 600 F.2d 1148, 1170 (5th Cir. 1979), and given the evidence that STI created multiple infringing versions of

No. 23-30298

PASS in 2019, we defer to the jury's determination that MGMTL's suit was not time-barred.

2

Second, breach of the Distributor Agreement. Here, STI levies two objections to the jury's verdict in favor of MGMTL: fair use and insufficient evidence of damages. We have already rejected STI's fair use defense. With respect to the sufficiency of evidence, the jury awarded MGMTL $30,000 in breach of contract damages, which is the same amount that MGMTL had planned to charge MFR for a one-year license of SMART. In light of the deference that we owe to a jury's award of damages, *see Gulf Eng'g Co. v. Dow Chem. Co.*, 961 F.3d 763, 768–69 (5th Cir. 2020), it was reasonable for the jury to determine that STI essentially helped itself to a free license of SMART by using and asserting ownership over MGMTL's intellectual property in SMART.

\*    \*    \*

In conclusion, we AFFIRM the district court's final judgment in favor of MGMTL on the copyright infringement and breach of the Distributor Agreement claims; we REVERSE the judgment for MGMTL on the two trade secrets misappropriation claims; and we VACATE the judgment in part and REMAND for the district court to enter judgment in favor of STI on the breach of the Software Evaluation Agreement claim.